**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BorgWarner Incorporated, | No. CV-20-00321-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Eleanor C Mariano, et al., | |
| Defendants. | |

Pending before the Court is Defendant/crossdefendant, Eleanor C. Mariano's ("Ms. Mariano") motion for summary judgement against Defendant/crossclaimant Mark Weber ("Mr. Weber") (Doc. 48.). Also pending before the Court is Ms. Mariano's motion for summary judgement against Defendant/crossclaimant Weber Living Trust ("WLT"). (Doc. 49.) Mr. Weber filed a response, (Doc. 59), and WLT did the same. (Doc. 56.) Ms. Mariano filed separate replies to both Mr. Weber's response, (Doc. 61), and WLT's response. (Doc. 62.) Oral argument on both motions was held on January 22, 2021. Having considered the parties' motions, the facts of the record, and relevant caselaw, the Court renders to following decision.

**I.     Background**

The undisputed facts of the case are as follows: Ms. Mariano married John Weber ("the Decedent") on June 5, 2010. The couple remained married until the Decedent's death on July 1, 2019. Ms. Mariano and the Decedent each had two children from prior marriages. Defendant Mr. Weber is one of Decedent's prior children. At the time of the marriage, the

Decedent was employed at Remy International Inc., and a participant in the Delco Remy International Executive retirement plan ("the Plan"). The Plan provides quarterly payments to members following the end of their employment with one payment every quarter for the ten years following termination of the employment relationship.

The Plan allows members such as the decedent to designate a beneficiary. In the Plan, "beneficiary" is a defined term "mean[ing] one or more individuals designated on the applicable form by the [p]articipant to receive a death benefit under the plan." (Doc. 50-1 at 8.) Upon the death of a Plan participant, the remainder of any payments yet due under the plan are payable to the beneficiary designated. The Plan terms also specify what will occur if no beneficiary is designated, saying:

> [t]he Participant may designate primary and contingent Beneficiaries to receive any Vested Supplemental Retirement Benefit available under the Plan, in the event of the Participant's death. If no Beneficiary is designated, any applicable Supplemental Retirement Benefit shall be distributed to (i) the Participant's spouse, then living, however, if not living, to (ii) the Participant's children, to be divided equally, however, if none are living, then to (iii) the Participant's estate….

(*Id.* at 16.)

The Decedent stepped down from his position at Remy International Inc. on February 28, 2013 and began receiving scheduled payments under the Plan. On November 10, 2015 Remy International Inc. was acquired by Plaintiff BorgWarner Inc., who continued to make the payments owed to the Decedent. At the time of his death, the Decedent was still owed $4,062,647.33 under the Plan terms. On February 11, 2020, BorgWarner Inc. filed an interpleader action with this Court under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 and Rule 22, Fed. R. Civ. P., seeking to determine who is the proper beneficiary of the Decedent's remaining benefits under the Plan. The interpleader Defendants, Ms. Mariano, Mr. Weber, and WLT, all agree the above quoted plan terms control distribution of the remaining benefits. However, each party disputes who is the rightful recipient of the benefits under the Plan terms.

Ms. Mariano alleges that under the Plan terms she is entitled to receive the remaining benefits as the Decedent's surviving spouse. Mr. Weber argues the terms of Ms. Mariano's prenuptial agreement with the Decedent prevent her from receiving the benefits, and as such, the benefits rightfully pass to he and his sister. WLT contends the provisions allocating funds to Decedent's surviving spouse or child are not applicable because Decedent designated WLT as Plan beneficiary. By the Plan terms, such a designation would take priority over the surviving spouse and child.

**A. Disputed Issue between Ms. Mariano and WLT**

The Decedent first created WLT on December 16, 2006 and amended the trust twice prior to his death--once in 2013 and once in 2016. (Doc. 50-1 at 53.) In the Decedent's last will and testament, WLT is listed as the recipient of his residual estate. (Doc. 57-1 at 3.) WLT alleges the Decedent declared on multiple occasions that he intended any remaining benefits under the Plan to be given the WLT and distributed under the trust terms. In support of this, WLT has produced an affidavit from the Decedent's lawyer and corporate counsel. (Doc. 57-2 at 3-4.) That affidavit states that the Decedent on multiple occasions in 2006, 2010, and 2016, informed his lawyer that he intended for WLT to receive the benefits under the Plan and intended the plan benefits to be distributed according to the trust terms. (*Id.*) Thus, WLT has alleged a claim in this action, asserting it is the proper recipient of the Plan benefits as the named beneficiary. (Doc. 44.)

Ms. Mariano has filed a motion for summary judgement against WLT's claim. (Doc. 49.) Ms. Mariano argues that the Plan itself is governed by Indiana law which requires a deceased to do "everything in his power" to designate a beneficiary. (*Id.* at 2.) Ms. Mariano further argues that WLT has failed to produce any evidence that Decedent signed a beneficiary form or otherwise informed BorgWarner Inc. that WLT was his plan beneficiary. (*Id.* at 6.) WLT acknowledges that BorgWarner Inc. states in its original complaint that it has not located a signed beneficiary form for the Decedent. However, WLT argues this is not dispositive because BorgWarner Inc.'s complaint was an unsworn pleading. (Doc. 56. At 6) Further, WLT notes that BorgWarner Inc.'s dismissal from this

1 action was contingent upon its agreement to answer discovery from the remaining parties
2 regarding the designation of a Plan beneficiary. (*Id*.; Doc. 40 at 3.) That discovery has not
3 yet been completed. WLT also contends that regardless of the uncompleted discovery, it
4 has sufficient evidence to defeat a summary judgement motion due to its proffered affidavit
5 signed by the Decedent's former attorney. (Doc. 57-2.)

**B. Disputed issues between Ms. Mariano and Mr. Weber**

Mr. Weber also argues that the Decedent signed no beneficiary form. However, Mr. Weber argues that Ms. Mariano is also not eligible to receive the Plan benefits because she agreed to waive her right under her prenuptial agreement.

The prenuptial agreement entered into by Ms. Mariano and the Decedent prior to their marriage contains several provisions relating to the separate nature of the couple's property. Both Ms. Mariano and Mr. Weber agree that under the terms of the prenuptial agreement the Plan was retained by the Decedent as his separate property during his lifetime in the sense that it was under his exclusive control. (Docs. 50 at 3; 59 at 5.) However, Ms. Mariano and Mr. Weber disagree about the correct effect to be given to other terms of the prenuptial agreement.

The disputed provisions of the premarital agreement include Section VII of the agreement, (Doc. 60-1 at 10-12), which states in pertinent part:

> Notwithstanding Internal Revenue Code Section 401(a) (11) or 417, as amended, and ERISA Section 205, as amended, to the contrary, the parties intend and agree that any retirement, pension, or profit sharing benefits, all account balances and additions thereto and all future contributions thereto, shall continue after the marriage of the parties to constitute the separate property of Husband and be subject to his beneficiary designation. In accordance with such intention and understanding, Wife agrees that after the parties' marriage she shall at the proper time execute a consent of spouse waiver of Qualified Joint and Survivor Annuity and Qualified Preretirement Survivor Annuity, in accordance with the requirements for such consent set forth in IRC 417 and ERISA 205 described above, or as such requirements may hereafter be amended. In the event Wife fails or refuses for any reason to properly execute such lull, sufficient and valid consent for any or all of the qualified plans covered hereby. Husband, his estate, and/or any affected designated beneficiary of his, as intended third party beneficiaries to this

- 4 -

Agreement, may file an action for specific performance, sue for damages or bring any other allowable legal action for breach hereunder by Wife.

Also disputed is the correct construction of Sections XII, XIV, and XVII of the prenuptial agreement. Section XII, (Doc. 60-1 at 17), is entitled "Gifts" and states:

> Notwithstanding the provisions of this Agreement, either party may in writing transfer, convey, devise or bequeath any property to the other. Neither party intends by this Agreement to limit or restrict in any way the right to receive any such conveyance, device or bequest from the other. A written inter vivo transfer or conveyance of property between the parties shall be deemed a gift between spouses unless clearly indicated to the contrary in a writing executed by both parties.

Section XIV, (*Id*. at 18), is entitled "Estate plan" and states in pertinent part:

> Notwithstanding the provisions of this Agreement, either party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully transferred during his or her lifetime by Will or otherwise upon death and neither party intends by this Agreement to limit or restrict in any way the right or power to receive any such transfer or conveyance from the other, but this provision shall not be construed as a promise or representation that any such additional gift, bequest or devise shall be made by either party…

Finally, Section XVII is entitled "Additional Documents" and states in pertinent part that:

> Husband and Wife agree to do all such things and take all such actions, and to make, execute and deliver such other documents and instruments as shall be reasonably required to carry out the provisions, intent and purpose of this Agreement. Without limiting the generally of the foregoing, each shall upon request execute, acknowledge and deliver to the other, disclaimer deeds and other similar instruments that title companies, banks and other institutions may require to preserve the identity of their separate assets and property, and each further agrees that they will execute any tax return, joinder, consent or any proper instrument of release, disclaimer, renunciation, quit claim, discharge, waiver, conveyance or other document which may be requested by the other's personal representative, trustee, transferee, successor or assign, to further and carry out the provisions of this Agreement.

Based on the above provisions of the prenuptial agreement, Mr. Weber brought a crossclaim against Ms. Mariano seeking a declaratory judgement that in light of the prenuptial agreement Ms. Mariano has waived any right to the Plan benefits, and that he, along with his sister, are the proper recipients as the Decedent's natural children. (Doc. 42 at 9-10.) Mr. Weber also brings claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment, alleging that Ms. Mariano had a duty to waive any benefits under the plan and that her failure harmed Mr. Weber. (Doc. 42 at 6-9.)

Ms. Mariano filed a motion seeking summary judgement of Mr. Weber's claims. (Doc. 48.) Ms. Mariano argues that summary judgement is appropriate because the entirety of Mr. Weber's claims rely upon a faulty construction of the premarital agreement because the premarital agreement did not waive or require her to waive her right to the Plan benefits.

The Court heard oral argument on Ms. Mariano's summary judgement motions against WLT and Mr. Weber on January 22, 2021. At the conclusion of argument, the Court took both matters under advisement.

## II.  **Standard of Review**

### A. Summary Judgement Under Rule 56(a)

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* at 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id*. at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *Id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### B. Arizona Contract Interpretation

"The interpretation of a contract is generally a matter of law." *Powell v. Washburn*, 211 Ariz. 553, 555 (2006). "Interpretation is the process by which we determine the meaning of words in a contract… and in Arizona, a court will attempt to enforce a contract according to the parties' intent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153 (1993). "The Court must decide what evidence, other than the writing, is admissible in

the interpretation process, bearing in mind that the parol evidence rule prohibits extrinsic evidence to vary or contradict, but not to interpret, the agreement." *Id*. In Arizona, a finding of ambiguity is not a prerequisite to the consideration of external evidence. Instead, "the judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor*, 175 Ariz. at 154 (*citing Pacific Gas & Elec. Co. v. G.W. Thomas Dray. & Rigging Co.*, 442 P.2d 641, 644, 645-46 (Cal. 1968)). "It is fundamental that a court attempt to 'ascertain and give effect to the intention of the parties at the time the contract was made if at all possible.'" *Id* (quoting *Polk v. Koerner*, 111 Ariz. 493, 495 (1975)).

Whether the contract language is susceptible to more than one meaning such that extrinsic evidence is admissible is a question of law for the Court. *Taylor*, 175 Ariz. at 158-59 (citing *Leo Eisenberg & Co., Inc. v. Payson*, 162 Ariz. 529, 532-33 (1989)). However, if the Court finds that a contract is susceptible to multiple interpretations and its construction requires reference to extrinsic evidence, then the interpretation of extrinsic evidence, any controversy over what occurred, and the proper inferences to draw from evidence of the surrounding circumstances all constituted disputes of fact preventing summary judgement. *Taylor*, 175 Ariz. at 159; *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 351 (1991) (holding that "the question of what the parties truly intended" is left to the fact finder when the parties intent "is not explicitly and clearly expressed in the words of the contract"); *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 75 P.3d 1075 (App. 2003); *CCSAM Family Ltd. P'ship v. King*, No. 2 CA-CV 2011-0061, 2012 Ariz. App. Unpub. LEXIS 1318 (App. Jan. 31, 2012).

**III.     Analysis**

**A. Ms. Mariano's Motion for Summary Judgement against WLT**

Ms. Mariano's is entitled to summary judgment against WLT because WLT has failed to bring forth any evidence of an element essential to its case and affirmatively declined to file a Rule 56(d) motion. WLT has the burden of presenting evidence in support

of its claim that the Decedent named it beneficiary yet has not presented adequate evidence of such a designation under the Plan's applicable law.

### i. WLT has the Burden of Proving it was Designated the Decedent's Beneficiary

Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. WLT's counsel argued that, as the movant, Ms. Mariano must affirmatively prove the absence of a beneficiary form in order to obtain summary judgment. This misstates the parties' burdens. As *Celotex* makes clear, the movant on a motion for summary judgment can prevail by showing that the non-movant has failed to bring forth sufficient evidence of an element essential to the non-movants case, and on which the non-movant would have the burden of proof at trial. 477 U.S. at 322. Here, Ms. Mariano's motion for summary judgment concerns WLT's crossclaim asserting its right to the Plan funds, a claim on which WLT would have the burden of proof at trial. Thus, Ms. Mariano need not "prove a negative" in order to prevail on her motion. She is quite allowed to bring summary judgment based on WLT's failure to adequately evidence its own claims.

### ii. Under Applicable Law, WLT has not Met its Burden of Proof

WLT has not presented adequate evidence of its right to the funds as a named beneficiary, and as such has failed to evidence an essential element of its case. WLT conceded at oral argument that the Plan is governed by Indiana law. Under Indiana law, the designation of a beneficiary is effective when it is executed according to the plan terms. *Bowers v. Kushnick*, 774 N.E.2d 884, 886-87 (Ind. 2002). If a policy's terms are not met, a prospective beneficiary can still prove their entitlement by showing "substantial compliance" of the plan participant's attempt to designate them as beneficiary. *Id*. at 887. However, substantial compliance requires showing the plan participant did "everything within his power to effect such a change." *Id* (quoting *Quinn v. Quinn*, 498 N.E.2d 1312, 1313 (Ind. Ct. App. 1986)). For example, in *Hamilton v. Hamilton*, the Indiana Court of Appeals found that "substantial compliance" occurred where a husband had begun the

process of changing a beneficiary but died before his lawyer could finish all of the paperwork. 132 N.E.3d 428, 437-38 (Ind. Ct. App. 2019) ("At the time…*there is nothing more he could have done* to separate his IRA funds and change his beneficiary." (emphasis added)).

Here, there is no evidence showing that the Decedent did anything, much less "everything within his power," to designate WLT as beneficiary. The Plan terms state that "'[b]eneficiary' means one or more individuals *designated on the applicable form* by the participant to receive a death benefit under the plan."[1] (Doc. 50-1 at 8 (emphasis added)). Yet no evidence presented by WLT details any action taken by the Decedent to obtain or fill out any beneficiary designation form. The only evidence offered by WLT is an affidavit of the Decedent's former attorney discussing past conversations with the Decedent. While the alleged conversations appear to show that the Decedent believed the Plan assets would go to the trust, nothing in the affidavit itself evidences any action taken by the Decedent to achieve that result.

There is one paragraph in the affidavit in which the affiant states that a third party, "confirmed to me his conversation with [Decedent] that [Decedent] had stated in 2006-2007 that his beneficiary under all benefit plans, including the SERP, was…through the 2006 Trust…" (Doc. 57-2 at 4.) However, this allegation fails to prevent summary judgment for two reasons. First, it appears to the Court that the affiant's statement relies on the inadmissible hearsay of a third party, rather than on any conversation within the personal knowledge of the affiant. As such, it is unclear to the Court how the affiant's statement could be reduced to an admissible form for trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1137 (9th Cir. 2003) (citing *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) ("hearsay evidence produced in an affidavit may be considered on summary judgment *if the declarant could later present the evidence through direct testimony*"). Second, even ignoring potential issues with the affiant's competence to testify,

---

[1] The Court notes this quote of the Plan terms also dispenses with WLT's claim at oral argument that the Plan does not denote how a beneficiary is designated and as such is distinguishable from other Indiana cases cited by Ms. Mariano.

the evidence is still insufficient to prevent summary judgment. Under Indiana law, WLT must present evidence showing the Decedent designated, or did "everything in his power" to designate a beneficiary. A 2006-2007 conversation in which the Decedent merely states that the trust is his beneficiary does not demonstrate that the Decedent did everything possible to designate a beneficiary.

    iii.    The Court will not Award Rule 56(d) Relief

At the end of oral argument, WLT's counsel asked that if the Court found WLT had not met its burden to defeat summary judgement on the merits, the Court would in the alternative grant Rule 56(d) relief. The Court declines to do so. If a party believes that summary judgment has been filed to early, or that it requires additional discovery to adequately make its case, that party can file a Rule 56(d) motion to stay ruling on a summary judgement motion. *CoreLogic, Inc.*, 899 F.3d at 678 (noting Rule 56(d) prevents grants of summary judgment before a party has had adequate opportunity to pursue discovery). Failure to adhere to the technical requirements of Rule 56(d) is grounds to deny a request for relief. *Roza Hills Vineyards, LLC v. Wells Fargo, N.A.*, 2020 U.S. Dist. LEXIS 235718, at *8 n.3 (W.D. Wash. Dec. 15, 2020).

At the beginning of argument, the Court questioned WLT's counsel as to why it had not filed a Rule 56(d) motion. Counsel admitted that WLT had considered filing a Rule 56(d) motion but ultimately decided to instead answer on the merits, believing it had sufficient evidence to defeat the motion. As explained above, WLT was incorrect in that belief. However, the tactical decisions made by counsel in the course of litigation will not undone by an ad hoc request for relief at oral argument. Counsel admitted it had specifically considered all of its options including a Rule 56(d) motion but affirmatively decided to respond on the merits. While that response did contain some references to discovery not yet been completed, counsel did not file any Rule 56(d) affidavit and did not request Rule 56(d) relief prior to oral argument. Further, it is not lost on the Court that the discovery allegedly needed to support its claims had already been authorized for WLT. (Doc. 40. at 3.)  However, WLT has taken no steps to actually obtain discovery from BorgWarner, nor

did it request an extension of time prior to filing its response to this motion. Either action would have given it the discovery that it claims is needed. Instead WLT did nothing for more than six months after being granted the ability to pursue its needed discovery, only to suddenly request Rule 56(d) relief at oral argument after a summary judgment motion was fully briefed. In light of these circumstances, Rule 56(d) relief is not merited.

WLT has presented no adequate evidence in support of its claim that the Decedent designated it as beneficiary, so Ms. Mariano's motion for summary judgement against WLT will be granted.

### B. Ms. Mariano's Motion for Summary Judgement against Mr. Weber

Summary judgment is appropriate as to Mr. Weber's claims to the extent the claims rest on the "spousal waiver" provision of Section VII of the prenuptial agreement. However, summary judgement is not appropriate against Mr. Weber's other theories of relief because the Court finds that some of the prenuptial agreement terms are reasonably susceptible to multiple interpretations and a factual issue exists as to the parties' intended scope of the agreement.

Each of Mr. Weber's claims against Ms. Mariano rests on the interpretation of Ms. Mariano's prenuptial agreement with the Decedent. It is well established that a prenuptial agreement is interpreted as a contract. *See, e.g., Nanini v. Nanini*, 166 Ariz. 287, 290 (App. 1990); *In re Estate of Levine*, 145 Ariz. 185, 188-89 (App. 1985); *Spector v. Spector*, 23 Ariz.App. 131, 134 (1975). "Generally, and in Arizona, a court will attempt to enforce a contract according to the parties' intent." *Colocation Am. Corp. v. Mitel Networks Corp.*, 2018 U.S. Dist. LEXIS 100686, at *18 (D. Ariz. 2018) (quoting *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993)). The purpose of interpreting a contract is to discover the parties' intent and to make it effective. *Id.* "The interpretation of a contract is generally a matter of law." *Powell v. Washburn*, 211 Ariz. 553, 555 (2006). However, if a contract is susceptible to multiple interpretations and requires reference to extrinsic evidence, then the interpretation of extrinsic evidence, any controversy over what occurred, and the proper inferences to draw from evidence of the

surrounding circumstances are considered disputes of fact preventing summary judgement. *Taylor*, 175 Ariz. at 159; *State ex rel. Goddard*, 206 Ariz. 117, 120 (Ct. App. 2003). In such cases "the question of what the parties truly intended" is left to the fact finder. *Burkons*, 168 Ariz. at 351.

i. Breach of Contract Claim based on Section VII

Summary Judgement is appropriate as to Mr. Weber's theory of relief based on the "spousal waiver" provision of Section VII. The first theory of Mr. Weber's breach of contract claim rests on the premise that Section VII of the prenuptial agreement:

> requires [Ms.] Mariano to 'execute a consent of spouse waiver of Qualified Joint and Joint Survivor Annuity and Qualified Preretirement Survivor Annuity, in accordance with the requirements for such consent set forth in IRC 417 and ERISA 205…[and] to properly execute such full, sufficient, and valid consent for any and all of the qualified plans covered by the premarital agreement.

(Doc. 42 at 6) (quoting Section VII). However, Mr. Weber's interpretation of Section VII is unpersuasive for two reasons. First, the Plan benefits at issue are not a "Qualified Joint and Joint Survivor Annuity" (QJSA) or a "Qualified Preretirement Survivor Annuity" (QPSA). Second, even if the Plan did constitute a QJSA or a QPSA, Section VII requires Ms. Mariano sign a "*consent of spouse* waiver," not a waiver of her right to receive benefits.

The annuities referenced in Section VII of the prenuptial agreement are a very precise type of retirement benefit that vests separately in an ERISA plan participant's spouse. As the Ninth Circuit explained, a QPSA "is an annuity *for the life of the surviving spouse* that must be at least fifty percent of the annuity amount which would have been payable during the joint lives of the participant and spouse." *Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1095 (9th Cir. 2006) The right to this particular annuity vests in the spouse separately from the rights of the plan participant. *Id.* As such, the provision of QPSA benefits to the spouse "may be waived by the participant *only if the spouse consents in writing to the designation of another*

*beneficiary.*" *Id.*[2]

The Plan benefits at issue in this litigation do not qualify as either QPSA or QJSA benefits. The plan benefits are not an annuity "for the life of the surviving spouse." *Hamilton*, 433 F.3d at 1095. Even if the Plan did provide a lifetime annuity, no party has alleged that Ms. Mariano has some separate vested right to the benefits such that the Decedent could not have left them elsewhere without her consent. Also, the Court notes that even if the Plan benefits did qualify as a QPSA or QJSA, Section VII does not require Ms. Mariano to execute a general waiver of benefits. Section VII requires her to "execute *a consent of spouse* waiver." As the statutory provisions and caselaw makes clear, a "consent of spouse" waiver disclaims Ms. Mariano's right to *prevent* the Decedent from designating a different beneficiary, but does not disclaim her right to the plan benefits if they are left to her. *Hamilton*, 433 F.3d at 1095; *Carmona v. Carmona*, 544 F.3d 988, 998 (9th Cir. 2008); *Boggs v. Boggs*, 520 U.S. 833, 842 (9th Cir. 1997). As such, it is clear that a proper construction of Section VII creates no duty upon Ms. Mariano to disclaim any interest in the plan benefits and her failure to disclaim the benefits does not breach her prenuptial contract with the Decedent.

ii. Breach of Contract Claim based on Section XVII

Summary Judgement is inappropriate as to Mr. Weber's remaining theories of relief based on other sections of the prenuptial agreement. Mr. Weber's claims also allege that Ms. Mariano has failed to "do all such things and take all such actions, and to make, execute and deliver such other documents…as shall reasonably be required to carry out the provisions, intent, and purpose" of the prenuptial agreement and thus breached her duty under Section XVII of the agreement. (Doc. 59 at 15-16.) Of course, Section XVII, does not of its own force require Ms. Mariano to waive any rights to the Plan benefits. The

---

[2] While the quoted language of the case refers only to a "qualified preretirement survivor annuity" the sole difference between a QPSA under 29 USCS § 1055(a)(1) and a QJSA under 29 USCS § 1055(a)(2) is whether a plan participant dies before or after the start of the annuity. *Carmona v. Carmona*, 544 F.3d 988, 998 (9th Cir. 2008).

pertinent language of Section XVII simply states that the couple agreed to do all such things and deliver or execute documents "*as shall be reasonably required to carry out the provisions, intent and purpose*" of the premarital agreement. To sustain a claim for breach of contract under this provision, the Court must examine other clauses of the prenuptial agreement to see if the "provisions" or "purposes" of the agreement required Ms. Mariano to waive the funds from the Plan.

Because other sections of the premarital agreement are susceptible to multiple interpretations, the Court finds there is a factual question as to whether the provisions and purposes of the agreement impose a duty on Ms. Mariano under Section XVII. Mr. Weber's crossclaim references multiple other provisions of the prenuptial agreement establishing that the Decedent and Ms. Mariano would keep their property separate. (Doc. 42 at 2-4.) Further, the Plan benefits were specifically listed as an item of separate property by the Decedent. (Doc. 60-1 at 30.) Mr. Weber's response also points to prenuptial terms allegedly contemplating a release of any claims and rights to the Decedent's separate property that Ms. Mariano received "incidental to the contemplated marriage." (Doc. 59 at 10 (referencing the premarital agreements recitals).) Finally, Mr. Weber's crossclaim references Section XIV of the prenuptial agreement, arguing it intended to limit the ways in which the Decedent could transfer property to Ms. Mariano upon his death. (Doc. 59 at 10-13.) Section XIV, states in pertinent part that:

> Notwithstanding the provisions of this Agreement, either party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully transferred during his or her lifetime by Will or otherwise upon death and neither party intends by this Agreement to limit or restrict in any way the right or power to receive any such transfer or conveyance from the other, but this provision shall not be construed as a promise or representation that any such additional gift, bequest or devise shall be made by either party…

(Doc. 60-1 at 18.) Mr. Weber asserts this clause of the prenuptial agreement lays out "limited transfer methods of "gift, bequest, or devise" by which the Decedent could leave

his property to Ms. Mariano. (Doc. 59 at 10-11.) As such Mr. Weber claims Ms. Mariano had a duty to waive the Plan benefits because they were left to her by a method other than that described in the prenuptial agreement.

Because the Court finds that the intended effect and scope of these sections of the agreement are susceptible to multiple interpretations, summary judgement is inappropriate at this time. In determining summary judgement is not appropriate, the Court does not intend to definitively accept or reject Mr. Weber's interpretation of the contract. However, the Court is mindful of *Taylor's* injunction that judges must "avoid the often-irresistible temptation to automatically interpret contract language as he or she understands the words." 175 Ariz. at 154-55 ("Words, however, are seldom so clear that they apply themselves to the subject matter"). So, finding that the contract is susceptible to multiple interpretations, the Court declines to grant summary judgment against Mr. Weber's breach of contract claim based on Section XVII.

    iii.    Remaining Claims

The Court's analysis above is equally applicable to Mr. Weber's remaining claims. Each of Mr. Weber's remaining claims can be tied back to the same allegations that Ms. Mariano disclaimed her interest or had a duty to disclaim her interest in the Plan benefits. These assertions are similarly based on Mr. Weber's interpretation of Section VII's spousal waiver provision, and his interpretation of Section XVII.[3]

As is indicated in the Court's analysis above, Section VII's "spousal waiver" provision does not waive or require waiver of Ms. Mariano's rights to the Plan benefits. As such, to the extent Mr. Weber's claims for good faith and fair dealing, for unjust

---

[3] Mr. Weber's good faith and fair dealing claim contends that he "expected [Ms.] Mariano would adhere to her obligation to disclaim any alleged interest in the plan," and rests its claim of breach on Ms. Mariano's "fail[ure] to execute the Spousal Waiver or any documents necessary to disclaim her alleged interest in the plan..." (Doc. 42 at 7-8.) Mr. Weber's unjust enrichment claim similarly claims that Ms. Mariano was unjustly enriched at his expense because she had waived her right to the benefits under the premarital agreement. (*Id.* at 8-9.) Finally, Mr. Weber's request for a declaratory judgment similarly depends on the Court finding Ms. Mariano waived or had a duty to waive her interest in the plan by way of the prenuptial agreement. (*Id.* at 9-10.)

enrichment, and for a declaratory judgment rely upon his theory of a "spousal waiver" under Section VII, summary judgment is appropriate.

However, to the extent Mr. Weber rests his remaining claims rely upon Ms. Mariano's alleged duties under Section XVII, summary judgement is not appropriate. As indicated above, several clauses in the contract are subject to multiple interpretations. So, there remains an open issue of fact whether Ms. Mariano had a duty to take further actions or execute a waiver under Section XVII in order to effectuate the purposes or provisions of the premarital agreement. In light of this, the Court finds that to the extent Mr. Weber's theories of relief rest on contractual provisions other than Section VII's "spousal waiver" provision, summary judgement is inappropriate.[4]

        iv.    <u>Ms. Mariano's Standing Argument</u>

Ms. Mariano asks the Court to grant summary judgement on the argument that Mr. Weber lacks standing. The Court notes that Ms. Mariano's argument against Mr. Weber's standing was based on the language of Section VII's "spousal waiver" provision. (Doc. 48 at 9.) Given the Court's resolution granting summary judgment against Mr. Weber for his claims based on Section VII's "spousal waiver" provision, the Court finds the standing issue is moot. Ms. Mariano never addressed or argued against Mr. Weber's standing to

---

[4] In light of the Court's disposition of the motion, the Court need not discuss in any great detail Mr. Weber's proffered interpretation of the contract based on *Kinkle v. Kinkle*, 699 N.E.2d 41 (Ohio 1998). However, at least in passing, the Court finds it pertinent to explain why the case did not sway the Court from finding the contract susceptible to *multiple* interpretations. First, the Court notes the case was decided under Ohio law which appears to have a narrower rule on the admission of parol evidence than Arizona. *Ohio Historical Soc. v. General Maintenance & Engineering Co.*, 65 Ohio App.3d 139, 146 (1989) (citing *Blosser v. Enderlin*, 113 Ohio St. 121, 132-34 (1925)). Second, the Court cannot say with any confidence whether the agreement in *Kinkle* is properly comparable to the present case. The *Kinkle* case examined only one "bluntly straightforward" paragraph. Thus, the Court is not convinced that *Kinkle's* analysis will adequately guide the Court's task to find the parties intent in this case where the agreement spans several pages and many different provisions. Third, the premarital agreement in the present case has multiple provisions that seem to contemplate at least some circumstances when the Decedent and Ms. Mariano could transfer property in life or upon death. As such, it is unlikely that their agreement can be equated to *Kinkle's* total bar on a wife's ability to claim or take property after the husband's death.

bring claims under other provisions of the prenuptial agreement. Further, it appears that in her reply Ms. Mariano expressly disclaims or abandons any argument against Mr. Weber's standing to bring his other claims. (Doc. 61 at 8.) As such the Court finds that no issues of standing prevent Mr. Weber from pursuing his remaining theories of relief.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Ms. Mariano's motion for summary judgement against Weber Living Trust, (Doc. 49), is granted;

**IT IS FURTHER ORDERED**, that Ms. Mariano's motion for summary judgment against Mr. Weber, (Doc. 48), is granted as to Mr. Weber's claims for relief based on Section VII's "spousal waiver" provision, and denied as to Mr. Weber's remaining theories of relief.

Dated this 1st day of February, 2021.

*[signature]*
Honorable Susan M. Brnovich
United States District Judge